[No. 36100.   Department One.   August 9, 1962.]

GEORGE D. FORSYTHE *et al., Appellants,* v. RALPH H. NEUBAUER *et al., Respondents.**

*John J. Kennett,* for appellants.

*Skeel, McKelvy, Henke, Evenson & Uhlmann,* by *Frederick V. Betts,* for respondents.

ROSELLINI, J.—This is a personal injury action arising out of an accident which occurred June 5, 1957, south of the

*Reported in 373 P. (2d) 780.

city of Seattle, on U. S. Highway 99. The jury returned a verdict for the defendants, and the plaintiffs appeal.

The collision in which the plaintiffs were injured occurred at approximately 6:45 p. m. at a point approximately 150 feet north of the intersection of Highway 99 with South 152nd Street in King County. At the place of the collision, Highway 99 extends in a general northerly and southerly direction. At a point approximately 500 feet north of the intersection, the highway is 72 feet wide, and consists of a 9-foot shoulder on the west; two southbound lanes, a medial divider, or traffic island, dividing the northbound and southbound lanes, two northbound lanes, and an 8-foot shoulder on the east.

At a point approximately 280 feet north of the intersection, the traffic island narrows down to a width of one foot. From that point south to the intersection with South 152nd Street, the divider is a concrete curb, one foot wide and 5⅞ inches high. The space occupied by the traffic island to the north then becomes a storage lane for southbound traffic intending to turn left on South 152nd Street. This storage lane is bordered on the east by the concrete curb. The western border of the storage lane consists of another one foot wide concrete curb, which extends 90 feet north from the northern edge of the intersection. The dividing line established by this second concrete curb is projected northerly another 80 feet by a series of 8 concrete buttons which are set 10 feet apart. The buttons are approximately one foot in diameter and 2¾ inches in height.

The flow of traffic at the intersection is controlled by three traffic signals. The vicinity of South 152nd Street is a commercial area where numerous shops and businesses are located. On the day of the accident, the plaintiffs were proceeding north in their automobile and had stopped for the traffic signal in the inside northbound lane. There were other vehicles behind them and to the right of them. According to the plaintiff husband's recollection, there was an automobile in front of him which had also stopped for the signal. When the light changed, the plaintiff husband

drove through the intersection, continuing in the inside lane.

The defendant Ralph H. Neubauer (who will be referred to hereafter as the sole defendant) was driving south in the outside lane (according to his testimony, which was uncontradicted) in an unloaded pickup truck owned by his father, the defendant Henry T. Neubauer. It was raining.

As the defendant approached the intersection, he was driving forty to forty-five miles an hour. It is not disputed that his speed was within the posted limits. Just before he reached the point where the traffic island narrows to a one-foot-wide divider in the center of the highway, he observed an automobile on the shoulder on his right-hand side of the highway, apparently leaving a parking place by a tavern. The defendant testified that the automobile started to move onto the highway, that he applied his brakes and turned into the inside lane in order to avoid a collision. His vehicle went out of control, and the rear wheels slid to the left, where they evidently came in contact with the concrete buttons and swung back around to the right. The truck turned around, so that the front was facing north, and slid into the left-turn storage lane. As it continued to slide, the rear of the truck went over the concrete divider, some 150 feet north of the intersection, and collided with the front of the plaintiffs' automobile.

An eyewitness, Mrs. Lois Wareing, was driving south on Highway 99, one or two blocks behind the defendant's pickup truck. A statement given by this witness shortly after the accident, was admitted in evidence. In it, she described the collision as follows:

" 'As I came over the rise a distance of 1 to 2 blocks away I saw the pickup involved in this accident spin slowly with its back to the left or towards the center of the road. At about the same time I noticed a car evidently pulling into the outside southbound lane right beside the pickup. It was at least halfway into the outside lane. After starting to spin to the left, the back end of the pickup swung back to the right and the truck turned all the way around so that it was facing north and going backwards. It went into the left turn lane and over the dividers. I couldn't notice

any particular speed on the part of the pickup but I can't say just how fast it was going. I would judge that the car coming onto the highway from in front of the tavern caused the driver of the pickup to lose control. The pickup went across the center dividers and into a northbound late model car. The car didn't have a chance to avoid the pickup as there were cars behind it and on its right. . . ."

A passenger in the car driven by Mrs. Wareing corroborated this statement.

The plaintiff husband, driver of the automobile, testified that after he had crossed the intersection, he became aware of the pickup, which was out of control and sliding sidewise down the left-turn lane. He did not anticipate that it was going to cross the center divider and did not stop his automobile. Another reason he did not stop was that there was traffic behind him and a danger of a rear-end collision if he stopped suddenly. The pickup suddenly "jumped in front of him," and his automobile collided with it. He was traveling twenty to thirty miles per hour at this point. His wife testified that she observed the pickup sliding down the highway, getting closer and closer, and was "scared."

■ The trial court concluded that this testimony of the plaintiff wife was sufficient to justify submission of the issue of contributory negligence to the jury; and the plaintiffs assign error to this ruling. In this we think they are correct. There was no evidence contradicting that of the plaintiff that the pickup was sliding south in the left-turn lane when he first observed it, and that he had no reason to suppose that it would change its course and "jump" over the divider. Nor was there evidence which would support a finding that the plaintiff husband should have anticipated, in the brief moments between the time the pickup went out of control and the collision, that it would cross the divider at the point where the collision occurred, rather than at some point farther south where he might have stopped his automobile. The fact that the plaintiff wife observed the pickup coming closer and was frightened, is hardly sufficient evidence to justify a finding that the plaintiff husband was negligent in failing to avoid the accident. The question is,

could he anticipate that a collision would occur at a given point if he did not stop?

The disinterested eyewitness testified that he had no chance to avoid the collision. The plaintiff testified that the pickup jumped over the divider suddenly and unexpectedly. It may be conceded that the plaintiff could anticipate that a vehicle out of control might jump the divider at any point. But can it be said that he should have anticipated at what precise point this would happen? We think not. The defendant's truck could as well have jumped the divider and collided with the plaintiffs' automobile at the point where it stopped, had it been stopped, as at the point where the collision occurred.

We are of the opinion that the evidence of contributory negligence was insufficient to justify the submission of that issue to the jury, and for that reason a new trial must be ordered.

The plaintiffs also urge that their motion for a directed verdict should have been granted because the evidence established the negligence of the defendant as a matter of law. The gist of their argument is that the accident could not have happened in the way that the defendant testified that it did. The defendant was asked to estimate the distance between his truck and the automobile which was on the shoulder, about to move onto the highway, when he first observed it. He stated that he was unsure of distances but would estimate sixty to sixty-five feet. The plaintiffs calculate that if this were the fact, and he was moving at a speed of 45 miles per hour, he would have been past the automobile before it reached the edge of the highway.

All that this proves is that the defendant was wrong in his estimate of the distance. It does not nullify his testimony that he observed the automobile start to move onto the highway when he was a short distance from it, that he applied his brakes and swerved to avoid a collision, and lost control of his truck. This testimony was supported by the observations of the eyewitnesses. Contrary to the plaintiffs' contentions, it was sufficient to justify the court

in submitting the question of the defendant's negligence to the jury, with an instruction to the effect that an automobile driver who, without negligence on his part, is suddenly placed in a position of peril and compelled to act instantly to avoid injury is not guilty of negligence if he makes such a choice as a reasonably prudent and careful person placed in such a position might make, even though he did not make the wisest choice.

The plaintiffs assign error to a number of instructions given and the refusal of other instructions.

While we are not required to do so, we have examined the instructions of which complaint was made and the instructions which were refused, insofar as the assignments of error are supported by legal argument. We find, however, that the only meritorious assignments of error pertain to instructions dealing with the issue of contributory negligence, which are not likely to be repeated on a new trial in view of our holding that that issue should not be submitted to the jury.

The judgment is reversed and the cause remanded for a new trial.

FINLEY, C. J., HILL, WEAVER, and FOSTER, JJ., concur.

January 31, 1963. Petition for rehearing denied.